UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
05/26/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

JESSE HOLLOWAY, )
Plaintiff, )
)
v. )
) Case No. 1:25-cv-00678-RLY-MG
RYDER INTEGRATED LOGISTICS, INC., )
and ROCKWELL AUTOMATION, INC., )
Defendants. )

**PLAINTIFF'S MOTION FOR JUDICIAL NOTICE #7**

Retaliatory Termination of Comparator Megan Nouvertne, HR Collusion, and Ryder's Ongoing Violation of a Consent Decree .

**I. INTRODUCTION**

Plaintiff Jesse Holloway, pro se, respectfully requests judicial notice under Federal Rule of Evidence 201(b)(2) of Ryder's retaliatory termination of Megan Nouvertne—a Customer Logistics Manager at the same facility, subjected to the same retaliatory pattern as Plaintiff. This filing demonstrates:

1. Direct comparator evidence under *McDonnell Douglas*;
2. Ryder's continued pattern of retaliation consistent with allegations documented in Plaintiff's previously filed but pending request for Judicial Notice #1 (EEOC Consent Decree);

3. HR's systemic suppression of complaints, corroborated by Nouvertne's sworn declaration (Exhibit A) and Plaintiff's contemporaneous whistleblower report (Exhibit B).

## II. FACTUAL BASIS FOR JUDICIAL NOTICE

### A. Megan Nouvertne's Protected Activity and Retaliation

1. Nouvertne, like Plaintiff, was a Customer Logistics Manager at Ryder's Whitestown, IN facility, reporting to the same supervisors (Stephen Toms, Melissa Isbell, Allen Adams)

2. From January–June 2024, she submitted multiple internal complaints against Logistics Manager Mike Snyder for:

  a. Verbal abuse in front of employees;
  b. Physical intimidation (cornering her alone);
  c. Sabotage of training documentation;
  d. Fabrication of a "near miss" incident; and
  e. Retaliation for challenging discriminatory promotions.

3. Despite complaints to HR (Abby Follis and Jessica Spell), Ryder:

  a. Refused to investigate;
  b. Failed to separate her from Snyder; and
  c. Allowed harassment to escalate.

**B. Retaliatory Actions Following Protected Activity**

4. On May 2, 2024, Nouvertne filed a protected EthicsPoint complaint after Toms stated, "we all lacked the capacity," regarding the promotion of Muhammad Khan over well qualified internal Black candidates.

5. 15 days later (May 17, 2024), she received a Final Written Warning for alleged profanity (reported by Snyder)—despite no prior discipline.

6. On June 15, 2024, after walking away from Snyder during a tirade, she was suspended by Snyder and Isbell.

7. On July 30, 2024, she was terminated—based on Snyders and Isbell's account of the June 15th incident.

**C. Parallels to Plaintiff's Case**

8. Plaintiff's August 8, 2024, whistleblower report (Exhibit B) submitted to employee relations partner (Abby Follis) documents the collusion of managers acting in concert for a targeted outcome.

9. Nouvertne's May 20, 2025, sworn declaration (Exhibit A) confirms:

a. Identical retaliation steps (protected complaint → uninvestigated → sudden discipline → termination);

b. HR's refusal to investigate employee's claims; and

c. Snyder's continued authority over Nouvertne, despite her multiple complaints of harassment submitted through proper channels.

## III. LEGAL SIGNIFICANCE

### A. Violation of Consent Decree (Judicial Notice #1)

The 2021 EEOC v. Ryder Consent Decree required:

a. Nationwide tracking of complaints;

b. Improved anti-retaliation protections; and

c. HR and management training.

Ryder violated every term in both Plaintiffs and Nouvertne's case, proving systemic disregard for federal oversight.

While the Court has not yet ruled on the pending Judicial Notices #1 through #6 motions, the factual exhibits and sworn declarations submitted therein are part of the record and support Plaintiff's claims independently under Fed. R. Civ. P. 56(c)(1)(A) and Fed. R. Evid. 404(b)(2)

## IV. COMPARATOR EVIDENCE UNDER MCDONNELL DOUGLAS.

Nouvertne is a direct comparator:

a. Same position, facility, and supervisors;

b. Same protected activity (Title VII complaints);

c. Same retaliation sequence (no prior discipline → sudden termination).

This pattern evidence is admissible under FRE 404(b)(2) to prove:

a. Motive (protect abusive managers);

b. Intent (suppress complaints); and

c. Pretext.

Courts evaluating Title VII claims consistently find that when similarly situated employees receive sudden, escalated discipline without prior documentation following protected activity, the employer's stated reasons are pretextual. See *Hobgood v. Illinois Gaming Board*, 731 F.3d 635 (7th Cir. 2013)."

## V. CONCLUSION

This Judicial Notice #7, along with previously submitted Notices currently pending before the Court, provide a well-supported evidentiary foundation demonstrating that Ryder's retaliation was not isolated, but systemic and intentional. The Court is respectfully asked to take notice of the following facts, each supported by declarations and contemporaneous communications already part of the case record:

1. Nouvertne's sworn declaration;

2. Ryder's Consent Decree violations; and

3. Plaintiff's email communication about managements and Employee relations treatment of Nourvertne.

This evidence is indisputable, and crucial to Plaintiff's claims.

Plaintiff respectfully requests that the Court take judicial notice of the above facts under Fed. R. Evid. 201(b)(2) and preserve this comparator evidence in the record as direct proof of retaliation, pattern liability, and Ryder's fraudulent misconduct.

**EXHIBIT LIST**

**Exhibit A**: Sworn Declaration of Megan Nouvertne (May 20, 2025)

**Exhibit B**: Plaintiff's Whistleblower Email (Aug. 8, 2024)

**Witness Statement of Megan Nouvertne**

I, Megan Nouvertne, declare the following based on my personal knowledge and recollection:

1. I am a white female who was employed by Ryder at the Whitestown, Indiana facility and was offered an HR position on or around November 7, 2023. MN

2. On January 24, 2024, I made an initial complaint to Human Resources (Jessica Spell) regarding Mike Snyder's behavior, including hostile actions, intimidation, and creating a toxic environment. MN

3. On January 26, 2024, I filed a more detailed complaint involving:

- Threats from Mike Snyder,
- Sabotaging my department,
- Publicly yelling at me in front of employees,
- Threats of escalation to upper management,
- And warnings about a possible Performance Improvement Plan (PIP).

I also communicated with Melissa Isbell via text about these issues. MN

4. On February 10, 2024, I reported that Mike was harassing me about statistics, questioning my job performance inappropriately. I also documented to Allen Adams that I was uncomfortable and needed support in navigating the issue. MN

5. On February 14, 2024, Mike attempted to force me to write a report on a "near miss" incident—despite being informed by his boss and mine that I was not required to do so. MN

6. On February 23, 2024, Mike cornered me when I was alone, trying to give me instructions without a witness—something I had repeatedly objected to. Allen Adams and Stephen Toms were informed. MN

7. On April 25, 2024, I reported that my audit forms went missing from Mike's desk even though Melissa confirmed seeing me submit them. This raised serious concerns of document sabotage. MN

8. On May 2, 2024, I submitted an Ethics Complaint via email to Employee Relations after a meeting with Stephen Toms. During this meeting, several of us—including myself—questioned why Muhammad Khan was promoted without a fair interview

process. In response, Stephen Toms stated that "we all lacked the capacity" for the role. This statement came directly after we raised concerns about fairness. I witnessed this being perceived as discriminatory and retaliatory by others in the room, many of whom were Black. Shortly afterward, my own retaliation escalated. MN

9. On May 3, 2024, during an emergency, Mike refused to answer his radio, and later blamed me for an allegedly flawed investigation. I documented this in personal notes. MN

10. On May 8, 2024, Mike screamed at me about an accident report I was actively investigating. Allen Adams pulled me into the office and said, "I don't want another HR investigation." This discouraged further reporting. MN

11. On May 17, 2024, Allen brought me into HR and handed me a final written warning—allegedly for using profanity ("fuck") in front of Theresa Brummett. I submitted this to Employee Relations but never received formal documentation in Workday. MN

12. On June 15, 2024, I was suspended by Mike Snyder and Melissa Isbell. I recorded the conversation. MN

13. On June 17, 2024, I emailed Abby Follis in Employee Relations regarding the retaliation I was experiencing. MN

14. On June 18, 2024, Theresa Brummett contacted me via email and tried to obtain a statement from me, despite her prior involvement in retaliatory discipline. MN

15. On June 21, 2024, an HR investigation was launched by Abby Follis. This conversation was recorded. MN

16. On July 30, 2024, I was terminated from Ryder. MN

I believe my termination was in direct retaliation for reporting toxic leadership, submitting internal complaints, and supporting colleagues who experienced discrimination. Ryder failed to protect me, and instead allowed my harasser—Mike Snyder—to remain in power and orchestrate my removal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 20 day of May, 2025.

Megan Nouvertne
Megan Nouvertne

Outlook

**Melissa & Mike & Megan & Allen**

**From** Jesse Holloway <Jesse_Holloway@ryder.com>
**Date** Thu 8/8/2024 3:23 PM
**To** Abby Follis <Abby_Follis@ryder.com>

4 attachments (2 MB)
IMG_3442.jpeg; IMG_3428.jpeg; IMG_3429.jpeg; IMG_3427.jpeg;

Abby,

I want to bring forth the truth about the Megan situation, as I know when she becomes emotional, she can't advocate for herself.

Megan endured a hostile work environment under Stephen Tom's leadership, particularly from Mike Snyder. Megan became a target after speaking out about the toxic management style and questioning their practices. Despite her repeated complaints about Snyder's harassment and micromanagement, management did nothing to protect her.

Instead of addressing Snyder's behavior, they advised Megan to maintain a professional facade, ignoring her legitimate concerns. When Megan finally stood up to Mike by walking away from a toxic interaction, she was terminated in a clear act of retaliation. This reflects the broader pattern of discriminatory and retaliatory practices within Stephen Tom's team.

Megan has never had any corrective actions beside the one her harasser, Mike, tried to fabricate. Allen and Stephen Tom's used Theresa to try to force a final action on Megan based on Mike's testimony. However, since all actions must go through a review from a third party, they couldn't push it through legitimately. Instead, they found another way, plotting against Megan and likely fabricating evidence to justify her termination.

Megan's firing was not only unjust but also a violation of our company's anti-retaliation and harassment policies. The rogue and renegade management under Stephen Tom's has created an unbearable work environment, targeting those who dare to speak out or question their practices.

I urge you to review this situation and take immediate action to address these violations and ensure accountability within the management team. Megan name and career with Ryder needs to be vindicated  for the unfair treatment she endured.
IMG_3804.mov




Get [Outlook for iOS]

**CERTIFICATE OF SERVICE**

I, Jesse Holloway, Plaintiff pro se, hereby certify that on May 26, 2025, I served this motion for Judicial Notice # 7 via electronic mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) on the following counsel of record for Defendant(s) Ryder Integrated Logistics inc.: and Rockwell Automation, Inc.:

1. Jacob A. Freeland

   Email: jfreeland@constangy.com

   *Attorney for Defendant Ryder Integrated, Inc.*

2. Christina M. Mallatt

   David Kuhnz

   Email: Christina.Mallatt@ogletree.com

   Email: David.Kuhnz@ogletree.com

   *Attorneys for Defendant Rockwell Automation, Inc.*

Jesse Holloway

11215 Willowmette LN

Indianapolis, IN 46235

765-240-3118