UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
06/20/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

JESSE HOLLOWAY, )
Plaintiff, )
)
v. )
) Case No. 1:25-cv-00678-RLY-MG
RYDER INTEGRATED LOGISTICS, INC., )
and ROCKWELL AUTOMATION, INC., )
Defendants. )

**PLAINTIFF'S EIGHTH JUDICIAL NOTICE AND DEMAND FOR SANCTIONS**

## I. INTRODUCTION

Plaintiff, pro se, respectfully submits this Eighth Judicial Notice and Sanctions Demand pursuant to Federal Rule of Evidence 201(b) and Federal Rule of Civil Procedure 11(c)(3), based on documented, material contradictions between Ryder's internal admissions and its statements to the EEOC and this Court.[1] These contradictions, knowingly presented by counsel, violate Rule 11(b)(3) and support the imposition of sanctions.[2]

## II. FACTS SUBJECT TO JUDICIAL NOTICE (FRE 201(b)(2))

The following facts are not subject to reasonable dispute and are verified through Ryder's internal correspondence, EEOC filings, and sworn court pleadings.[3] Each is supported by documentation that meets the standard for judicial notice under Federal Rule of Evidence 201(b)(2):

### 1. October 14, 2024

Plaintiff submitted a formal complaint to Ryder's Human Resources department detailing (Exhibit – A):

1. Unpaid work performed on scheduled off-days;
2. Wage suppression following FMLA usage;

---

[1] "See *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), which articulates the court's broad authority to impose sanctions for filing conduct that is knowingly unsupportable."

[2] *"Rule 11(c)(3) authorizes the Court to order an attorney, law firm, or party to show cause why conduct specifically described in an order has not violated Rule 11(b), thereby justifying sanctions when representations are knowingly unsupported by evidence."*

[3] *Under Federal Rule of Evidence 201(b)(2), the Court may take judicial notice of facts that are not subject to reasonable dispute when those facts are supported by indisputable evidence."*

3. Comparator evidence of other employees being compensated differently under similar conditions.

**2. November 15, 2024**

Ryder submitted its First EEOC Position Statement (Exhibit – A), falsely claiming:

1. "Mr. Holloway had not submitted any information establishing that he had not been paid bonuses for working on any of his days off."

This statement was submitted after Ryder received Plaintiff's October 14, 2024 internal complaint and constitutes a misrepresentation to a federal agency.

**3. December 6, 2024**

Maria Ruiz, Vice President of Human Resources at Ryder, responded to Plaintiff's December 5 email and confirmed in writing (Exhibit – B):[4]

1. "We will look into the April dates you provided today as days where you worked on your scheduled days off but were not compensated as is the practice at this location."

This is a direct admission of wage suppression and an acknowledgement of inconsistent compensation practices, confirming the very facts Ryder denied to the EEOC.

**4. February 3, 2025**

Ryder submitted its Second EEOC Position Statement (Exhibit – B), falsely asserting:

1. "Although Mr. Holloway never produced any proof that he actually worked the days for which he demanded bonus pay, VP Maria Ruiz agreed to pay Mr. Holloway the $270 he claimed he was owed."

This statement is directly contradicted by both the October 14 HR complaint and Maria Ruiz's December 6 admission. It deliberately misrepresents Plaintiff's evidence and mischaracterizes the basis for payment.— Furthermore it further proves the defendants were attempting to cover the fact that Tom's s withheld Plaintiff's lawfully earned wages.

**5. June 13, 2025**

Ryder filed its Answer to the First Amended Complaint, denying each of Plaintiff's wage-related claims under Paragraphs including:

- Denial that Plaintiff worked unpaid off-days;

---

[4] "See *United States v. Rich*, 76 F.R.D. 145 (S.D.N.Y. 1989), for an illustration of the statutory permissibility of taking judicial notice of administrative records not subject to dispute."

- Denial that Ryder withheld “Good Faith” wages;
- Denial of any comparative pay disparity;
- Denial that Ryder violated FMLA or ADA-related pay protections.

These denials are flatly contradicted by internal HR correspondence, Maria Ruiz’s own statement, and Ryder’s earlier pay adjustment to Plaintiff.[5]

**III. RULE 11(b)(3) VIOLATIONS – FACTUAL MISREPRESENTATIONS**

Under Rule 11(b)(3), all representations to the Court must have evidentiary support or be likely to have such support after investigation.[6]

Ryder’s denials and EEOC filings:

- Misrepresent what Maria Ruiz already admitted;
- Omit internal policy violations already discussed with Plaintiff;
- Contradict known internal findings regarding unpaid work and post-FMLA wage disparities;
- Were submitted after issuing “good faith” back pay, which is inherently inconsistent with their public denials.
- Infers a coordinated effort to fraudulently misrepresent material facts.

This conduct rises to sanctionable misconduct under Rule 11(b)(3).[7]

**IV. REQUEST FOR SANCTIONS UNDER RULE 11(c)(3)**

No safe harbor is required because this demand invokes Rule 11(c)(3), which allows the Court, on its own initiative, to:

1. “Order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).”

Plaintiff respectfully requests the Court issue an Order to Show Cause as to why Ryder and its counsel should not be sanctioned for:

- False denials of wage-based allegations (¶16, ¶ ¶112-113, ¶131, ¶¶151-152, ¶156, ¶165, ¶167,¶¶236-237, ¶255, ¶259, ¶265, ¶275, ¶282);
- Misleading factual claims in multiple EEOC filings;
- Misuse of “good faith” language to conceal liability;

---

[5] “The denials in Ryder’s Answer to the First Amended Complaint (June 13, 2025) are directly contradicted by internal HR correspondence and the prior ‘good faith’ back pay adjustment, reinforcing the evidence of inconsistent and misleading representations.”

[6] The cumulative evidence—including internally documented admissions, conflicting EEOC filings, and the disparate treatment of compensation issues—justifies both the judicial notice as well as the imposition of sanctions under the governing evidentiary and procedural rules.”

[7] “See *Odorizzi v. Bloomfield School District*, 426 F. Supp. 2d 576 (N.D.N.Y. 2006), for discussion on sanctions arising from misrepresentations in litigation filings.”

- Concealing internal HR findings that corroborate Plaintiff's claims.

**V. REQUESTED RELIEF**

Plaintiff respectfully asks the Court to:

1. Take Judicial Notice of Exhibits A–E under FRE 201(b)(2);
2. Issue an Order to Show Cause under Rule 11(c)(3);
3. Upon review, impose appropriate Rule 11(c) sanctions, including:
    a) Striking Ryder's denials deemed false by this Judicial Notice;
    b) Monetary sanctions to deter future misconduct;
    c) Requiring Ryder to amend its Answer with corrected admissions;
    d) Any other relief the Court deems just and proper.

**VI. CONCLUSION**

Accordingly, this Court possesses not only inherent authority but also a documented basis to act. The defendants' fraudulent concealment and deliberate efforts to obstruct the plaintiff's pursuit of justice—corroborated by internal admissions—confirm the plaintiff's allegations and expose the defense filings as knowingly false. Ryder has manipulated its EEOC position statements and Answer to impede the truth-finding process. Consequently, sanctions are not merely discretionary; they are imperative.

Respectfully submitted,

Jesse Holloway
/s/ Jesse Holloway
11215 Willowmette Ln.
Indianapolis, IN 46235
Telephone: (765) 240-3118
ariesjackson702@icloud.com
PRO SE PLAINTIFF
Dated: June 20, 2025

# Exhibit A

## FIRST POSITION STATEMENT FRADULENT MISREPRESENTATIONS

> Only three weeks after Mr. Holloway's first HR complaint against Mr. Toms was determined to be unsubstantiated, Mr. Holloway filed another complaint on July 29 alleging that Mr. Toms: (1) denied Mr. Holloway spot bonuses for working on his days off; (2) terminated CLM Christopher Dupree because of his race (African-American); (3) treated Logistics Manager Michael Snider and CLM James Delashmit more favorably than Mr. Holloway because they are Caucasian; and (4) Ryder hired more white employees than minorities for management roles. Employee Relations Partner Abby Follis again thoroughly investigated Mr. Holloway's complaint, but the allegations were not substantiated. First, the investigation showed Mr. Holloway had not submitted any information establishing that he had not been paid bonuses for working on any of his days off, and Mr. Toms confirmed that he had approved all requests for spot bonuses received from all CLMs. Second, management had terminated Mr. Dupree's employment because of his inappropriate conduct toward his peers and subordinates in violation of Ryder's Workplace Conduct policy and not because of his race. Third, the

> Only three weeks after Mr. Holloway's first HR complaint against Mr. Toms was determined to be unsubstantiated, Mr. Holloway filed another complaint on July 29 alleging that Mr. Toms: (1) denied Mr. Holloway spot bonuses for working on his days off; (2) terminated CLM Christopher Dupree because of his race (African-American); (3) treated Logistics Manager Michael Snider and CLM James Delashmit more favorably than Mr. Holloway because they are Caucasian; and (4) Ryder hired more white employees than minorities for management roles. Employee Relations Partner Abby Follis again thoroughly investigated Mr. Holloway's complaint, but the allegations were not substantiated. First, the investigation showed Mr. Holloway had not submitted any information establishing that he had not been paid bonuses for working on any of his days off, and Mr. Toms confirmed that he had approved all requests for spot bonuses received from all CLMs. Second, management had terminated Mr. Dupree's employment because of his inappropriate conduct toward his peers and subordinates in violation of Ryder's Workplace Conduct policy and not because of his race. Third, the

## CONTRADICTIONS TO FIRST POSITION STATEMENT

4255 S 500 E

Allen Adams
Reply Reply all Forward
To: Ronnell Atkins; Ryan Lawrence; Luz Adriana Garzon Castro; Justin McNaughton; ANTHONY AKINADE; Anthony Wilson; JORY ROGERS; Juvelyn Clarkson; John Goodman; +9 others
Mon 4/8/2024 11:33 AM
Cc: Stephen Toms; Melissa Isbell; MICHAEL SNIDER; Seth Hatheway; Eric Wiggins; Andy Mack; Kylee Land; JANNA PETTY

High importance Flagged

Hello,
Please let me know who will be attending in person so that we can order the food. Please follow up by the end of your shift today.

**Allen Adams**
Automotive
Senior Manager Logistics

**Ryder System Inc.**
4255 S 500 E
Whitestown, USA-IN 46075

Whitestown, USA-IN 46075

Allen Adams
Reply Reply all Forward
To: Ronnell Atkins; Ryan Lawrence; Luz Adriana Garzon Castro; Justin McNaughton; ANTHONY AKINADE; Anthony Wilson; JORY ROGERS; Juvelyn Clarkson; John Goodman; +9 others
Mon 4/8/2024 12:22 PM
Cc: Stephen Toms; Melissa Isbell; MICHAEL SNIDER; Seth Hatheway; Eric Wiggins; Andy Mack; Kylee Land; JANNA PETTY; Chandler Parrish; Bridget Weldon; Theresa Brummett

A good call out. Remember that this is a mandatory meeting that we are all required to attend either in person or teams. We need a headcounts for who is attending in person so that we are able to order enough food for everyone.

...

**Date** Tue 10/8/2024 2:02 AM

**To** ariesjackson702@icloud.com <ariesjackson702@icloud.com>

Number
HRC1628508

Created: just now | Updated: just now | State: **Ready**

Raise a Concern

Opened for: Jesse Holloway

Subject person: Jesse Holloway

Activity | Attachments | **Additional Details**

**Please describe the situation in detail**

I am writing once again to address the ongoing and blatant discrimination I have faced. After numerous attempts to resolve these issues internally, I am left with no choice but to seek someone who can advocate on my behalf, as my concerns continue to be ignored.

I have come in on my off days several times, either voluntarily or when mandated, to ensure the business continues to run smoothly. However, unlike my colleagues, I was not compensated for this extra work. Other employees were paid for their time, while I was either denied or shortchanged. I am left wondering, why me? Is it because of my race or my disability? Either way, it is wrong, and I should not have to suffer for doing my job, while maintaining my health.

For example, on my off days, Wednesday(10/3/2024) and Thursday(10/4/2024), I worked, but while my colleagues received $540, I was only compensated $270. The only difference between us is that I utilized my FMLA intermittent leave with vacation on Saturday, a scheduled workday. This reduction in pay for using FMLA is a clear case of FMLA interference and retaliation. I'm being penalized for managing my health, and it's not the first time. On multiple occasions, I've worked on my off days and been either underpaid or not compensated at all, while others were paid appropriately.

I have been denied a promotion despite being the most qualified candidate internally. I am left feeling that my race and my disability are being used as reasons to exclude me from opportunities and fair compensation. Stephen Toms and Allen Adams have consistently conspired to block my advancement, promoting less qualified individuals and using coded language like "too arrogant" to sideline me. Stephen Toms' preferential treatment of certain employees has become increasingly apparent, yet no action has been taken to address it.

I have reached out to corporate HR numerous times, only to be met with inaction and empty promises. Despite my commitment and willingness to go above and beyond for this company, I have been repeatedly dismissed. This ongoing discrimination has become mentally and physically exhausting.

**When did this happen? (Please provide the date(s) if available or best estimate of when it occurred)**

All of 2024

**Please indicate anyone you (or an employee on whose behalf this concern is submitted) have spoken to already about this (HR, Your Manager, etc.)**

Employee Relations

**From:** Jesse Holloway <Jesse_Holloway@ryder.com>
**Sent:** Monday, October 14, 2024 3:33 PM
**To:** Crystal Shamoon <Crystal_Shamoon@ryder.com>
**Cc:** ariesjackson702@icloud.com
**Subject:** Re: HR - ER Investigation Case # HRC1628501

Crystal,

I am following up to address ongoing pay discrepancies, retaliation for FMLA usage, and inconsistent application of Ryder's policies. These issues not only create undue stress but directly impact my financial well-being and health management. Below are key violations and concerns, with references to applicable Ryder policies and relevant federal and state guidelines:

• April: I called in sick, but my pay was reduced, in violation of Ryder's "Absence Due to Illness" policy for salaried employees, which ensures full pay for exempt employees during approved absences. However, Megan and Sam, who called off before or after me, were paid their full salary without any deductions, indicating disparate treatment and non-compliance.
• April and May: I was mandated to attend All-Leaders meetings on my scheduled off days, although I was the only manager off. I was not compensated, despite Ryder's Working Hours and Pay policy, which stipulates fair pay for time worked. Managers such as Jory, John, Juvelyn, and Anthony were properly compensated for working on their off days, further highlighting inconsistent application of the policy.
• July: I utilized FMLA intermittently, but my pay was reduced, which is a direct violation of both the Family and Medical Leave Act (FMLA) and Ryder's FMLA policy, which ensures that FMLA leave must not impact pay for salaried employees. This pay reduction raises concerns

impact pay for salaried employees. This pay reduction raises concerns of retaliation for taking protected leave.

• August: I worked two Thursdays and was not paid the OT incentive, contrary to Ryder's Working Hours and Pay policy, which mandates proper compensation for overtime. Ben Ramirez informed me about the OT incentive and said he would escalate it to Stephen Toms. I also reached out to Allen Adams to request back pay, only to be told that Stephen denied my request. I later discovered that all salaried employees working more than 40 hours receive the OT incentive, meaning I was unfairly denied compensation in violation of both company policy and Indiana's Wage Payment Statute (Indiana Code 22-2-5-1).

• October: After using FMLA, I worked on Wednesday and Thursday during the pay period. However, I only received $270 in OT incentive pay, while others performing the same duties received $540. This inconsistency demonstrates discriminatory treatment and retaliation tied to my health status and FMLA usage, violating Title VII of the Civil Rights Act and Ryder's internal guidelines on equal treatment and pay practices.

These repeated violations of Ryder policies and federal protections, including FMLA, Title VII, and state wage laws, reflect a clear pattern of retaliation and discrimination, that I have been reaching out to Abby Follis, Tim O'Brien, and Ryder ethics about all year.

Get Outlook for iOS

---

# Exhibit B

## FREADULENT MISREPRESENTATION 2ND POSITION STATEMENT

Mr. Holloway claims he was improperly paid, denied a promotion, disciplined, and discharged because of his race (African American), an alleged disability, and/or in retaliation for engaging in protected activity in alleged violation of Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act of 1990, as amended, and 42 U.S.C. § 1981. As shown herein, these claims are without merit. Mr. Holloway expressed several times that he was the smartest person in the workplace and, as such, he frequently complained to HR when he disagreed with a managerial decision or directive. Employee Relations thoroughly investigated all of Mr. Holloway's complaints, but his claims of discrimination and retaliation regarding his pay, leave requests, non-promotion to Logistics Manager, and managerial authority were not substantiated. During a November 2024 audit of Ryder's customer's worksite, Mr. Holloway made negative and damaging remarks about Ryder's warehouse operation to the external auditor and the customer's site leader. This blatant show of poor judgment

Only three weeks later, Mr. Holloway filed another complaint on July 29 alleging that Mr. Toms: (1) denied Mr. Holloway spot bonuses for working on his days off; (2) terminated CLM Christopher Dupree because of his race (African-American); (3) treated Logistics Manager Michael Snider and CLM James Delashmit more favorably than Mr. Holloway because they are Caucasian; and (4) hired more white employees than minorities for management roles. Employee Relations Partner Abby Follis again thoroughly investigated Mr. Holloway's Complaint, but the allegations were not substantiated. First, Mr. Holloway did not submit any information showing that he had worked days off but not received spot bonuses, and Mr. Toms confirmed that he had approved all requests for spot bonuses submitted by CLMs. Second, Mr. Dupree's employment was terminated because of his inappropriate conduct toward his peers and subordinates in violation of Ryder's Workplace Conduct policy and not because of his race. Third, the investigation confirmed that Mr. Toms offered all CLMs one-on-one meetings to discuss job performance and career planning, but only Mr. Delashmit accepted. Fourth, Mr. Toms had terminated the employment of both Mr. Snider and Mr. Delashmit for violations of Company policy. Finally, the investigation showed that employees of multiple races, not just Caucasians, had been hired or promoted into management roles in the year since Ryder began operations at the facility. In short, there was no evidence of any discriminatory employment actions, and Mr. Holloway's Complaint was unsubstantiated. (See Exhibit H, closure communication).

### A. Mr. Holloway's Pay Discrimination Claim Fails Because He was Properly Compensated Throughout his Employment.

To prove pay discrimination under the relevant statutes, Mr. Holloway must first establish a *prima facie* case by showing that (1) he was a member of a protected class(es); (2) he was meeting Ryder's legitimate performance expectations; (3) he suffered an adverse employment action regarding his pay; and (4) Ryder treated a similarly-situated individual outside the protected class(es) more favorably. *See Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 704 (7th Cir. 2003). Even if Mr. Holloway could establish the first two elements (which he cannot, given his myriad performance issues), his claim fails because he did not suffer any adverse employment action regarding his pay.

Thus, while Mr. Holloway claims he was discriminatorily denied proper compensation for "working overtime in April, May, and October 2024," he was in fact an exempt management employee under the FLSA and state law and therefore not entitled to overtime pay, regardless of how many hours per week he worked. Mr. Holloway's claim that he was discriminatorily deprived of spot bonuses is also without merit because although Mr. Holloway never produced any proof that he actually worked the days for which he demanded bonus pay, VP of HR Operations & Employee Services Maria Ruiz agreed to pay Mr. Holloway the $270 he claimed he was owed. Lastly, Ryder granted Mr. Holloway's request for intermittent Family and Medical Leave Act leave in July 2024, permitted him to take off all the days he requested without penalty, and properly compensated him throughout his intermittent leave period in accordance with applicable law and Ryder's policies. There is absolutely no evidence to support Mr. Holloway's bald claim that Ryder failed to properly compensate him as compared to "employees utilizing non-FMLA leave." In short, Mr. Holloway cannot establish even a *prima facie* case of pay discrimination, and the claim fails as a matter of law.

From: Maria M. Ruiz mruiz@ryder.com
To: Jesse Holloway Jesse_Holloway@ryder.com, Jennifer Birriel Jennifer_Birriel@ryder.com
Date: Fri, Dec 6, 2024, 12:00 PM

Hi Jesse,

Thank you for your kind words, I do take my job very seriously and it was my pleasure to walk you through each of the allegations you made and how we arrived at our findings. We will look into the April dates you provided today as days where you worked on your scheduled days off, but were not compensated as is the practice at this location.

We reviewed the investigations conducted in response to your concerns/allegations and any requiring remediation were addressed accordingly and communicated to you during our call today.

To recap, yesterday, 12/5/2024, we discussed:

- the issuance of the FMLA notice/coaching
- the $270 you believe is owed to you for working on a scheduled day off
- Final Written Warning for Workplace Conduct issued on 11/8/2024
- Leadership meeting attendance and related pay
- Professionalism and expectations of managers

1 / 6

- Mr. Holloway created and filled a new Floor Coordinator position with a higher pay scale that other positions at the same level without any communication with or approval from upper management. When counseled about his actions, Mr. Holloway did not accept responsibility and instead blamed his actions on allegedly poor management by Mr. Toms.

In view of these actions, management in consultation with HR determined that Mr. Holloway's continued unprofessionalism and refusal or inability to work collaboratively and cooperatively with others violated Ryder's Principles of Business Conduct. As a result, Mr. Holloway's employment was terminated effective December 18, 2024. (See Exhibit J, termination letter).

**III. Analysis and Discussion**

**From** Jesse Holloway <Jesse_Holloway@ryder.com>
**Date** Sun 6/30/2024 11:09 PM
**To** Allen Adams <Allen_Adams@ryder.com>
**Cc** Benjamin Ramirez <Benjamin_Ramirez@ryder.com>

Good evening,

I am writing to formally request a wage increase of 15-20%, reflecting my performance and contributions since joining Ryder over a year and several months ago.

In today's competitive market, retaining self-sufficient and highly effective talent is critical. Finding individuals who not only meet but exceed expectations is increasingly challenging. As someone who takes complete ownership of my department, I operate effectively above my role as a Logistics Manager for 1.0, consistently delivering exceptional results.

My tenure at Ryder has been marked by a commitment to excellence, innovation, and leadership. Here are some key highlights of my contributions:

1. **Management and Ownership**: I manage my department with a high degree of autonomy, bringing structure and accountability. I have increased productivity, achieving more with less, and reduced errors significantly by implementing rigorous training and transparent accountability measures.
2. **Talent Development**: I nurture and build talent within my team, driving a culture of continuous improvement. My proactive cross-training initiatives have groomed future leaders who can operate independently with minimal supervision.
3. **Innovation and Culture**: I am an innovator who continuously drives cultural change within my team. My introduction of floor coordinators has boosted workflow and increased productivity in the parcel area. I prioritize the betterment of my department and the company without needing to be prompted.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of June, 2025, a true and correct copy of the above and foregoing was served via the Court's electronic filing system, and via electronic mail, on the following:

Jacob A. Freeland

R. Evan Jarrold,

Constangy, Brooks, Smith & Prophete, LLP

Email: jfreeland@constangy.com

Email: ejarrold@constangy.com

Counsel for Ryder Integrated Inc & Rockwell Automation Inc.,

Jesse Holloway

Pro Se Plaintiff

/s/ Jesse Holloway