UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
06/22/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

JESSE HOLLOWAY, )
Plaintiff, )
)
v. )
) Case No. 1:25-cv-00678-RLY-MG
RYDER INTEGRATED LOGISTICS, INC., )
and ROCKWELL AUTOMATION, INC., )
Defendants. )

**PLAINTIFF'S DECLARATION AND MOTION FOR SANCTIONS AGAINST DEFENDANT ROCKWELL AUTOMATION, INC. FOR FALSE DENIALS CONTRADICTED BY BINDING CONTRACTUAL AGREEMENT**

## I. DECLARATION OF JESSE HOLLOWAY

I, Jesse Holloway, declare under penalty of perjury:

1. I am the Plaintiff in this matter and have personal knowledge of the facts stated herein.
2. Attached as Exhibit A are excerpted sections from the Master Services Agreement ("MSA") between Rockwell Automation, Inc. and Ryder Integrated Logistics, Inc. These sections were executed on January 6, 2023 and were in effect throughout my employment.
3. These contract excerpts confirm:

   a) Ryder contractually agreed to indemnify Rockwell for all "employment-related claims arising from Ryder's performance."

   b) Rockwell was to be promptly notified of any such claim, including EEOC complaints and lawsuits.

   c) Rockwell retained the legal right to participate in or assume control over any such claim or defense.[1]

4. These provisions directly contradict Rockwell's representations to this Court denying:

   a) Knowledge of my EEOC charge or federal complaint;

---

[1] See *Heath v. Indianapolis Fire Dept.*, No. 1:18-cv-01512-JPH-MPB, 2020 WL 4810962, at *4 (S.D. Ind. Aug. 19, 2020) (holding that an employer's knowledge of potential claims may be inferred from its contractual obligations and its right to control the defense)

   b) Any control, supervisory authority, or liability for Ryder's conduct;
   c) Any duty to intervene or monitor discriminatory activity;
   d) Any joint employment relationship.

5. These contradictions are not legal disagreements — they are material falsehoods made in pleadings, including:
   a) Rockwell's Answer denying knowledge of the EEOC complaint;
   b) Defendant's Opposition to Plaintiff's Motions for Judicial Notice, treating the MSA and Supplier Code as irrelevant;
   c) Defendants' Motion to Dismiss, falsely asserting that Plaintiff never alleged a joint employer theory or Rockwell's involvement.[2]
6. Attached as Exhibit B are email communications from Rockwell's Vice President, Law and Ombuds Officer (Gary Ballesteros) and Legal Counsel (Lauren Orton), confirming:
   a) Rockwell received and acted upon notice of internal discrimination and retaliation complaints prior to and contemporaneous with the EEOC charge;
   b) Rockwell actively participated in assessing and ratifying the discipline issued to Plaintiff (Nov. 25, 2024 email), contradicting its denial of any role.
   c) Plaintiff informed EEOC to Amend charge and notify Rockwell.
7. The only way Rockwell could have been unaware, is if Ryder breached the MSA, which they have not claimed, and or the EEOC failed to reach out to them. Therefore, Rockwell's denials are either:
   a) Knowingly false and submitted in bad faith; or
   b) Made without reasonable inquiry, in violation of Rule 11(b)(3).
8. These documents and emails directly contradict Rockwell's representations to this Court denying:
   a) Knowledge of the EEOC charge (ECF No. 49, ¶11)
   b) Participation or oversight of the discipline (contrary to Orton and Ballesteros emails);
   c) Status as a joint employer (contrary to what the Defendants have asserted to the court.)

---

[2] See *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (holding that false denials of involvement, when contradicted by documentary evidence, create a triable issue in violation of Rule 11).

9. I declare under penalty of perjury that the contents of this declaration and attached Exhibits A and B are true and correct.

Executed on June 22, 2025

Jesse Holloway
/s/ Jesse Holloway

**II. MOTION TO SHOW CAUSE**

**A. Legal Basis**

Pursuant to Fed. R. Civ. P. 11(c), Plaintiff respectfully moves this Court to order Rockwell to show cause for submitting pleadings that contradict contractual facts known or reasonably available to them.

**B. Grounds for Sanctions**

Rule 11(b)(3) prohibits parties from submitting claims, defenses, or factual contentions without evidentiary support or reasonable belief they will have support after further investigation.[3]

Rockwell, through its filings, has:

1. Denied knowledge of the EEOC complaint despite being contractually entitled to notice under their mutually entered agreement— MSA .[4]
2. Denied joint employer status or control while retaining the contractual right to "assume control" of Ryder's defense .
3. Treated the MSA and Supplier Code as irrelevant despite MSA §23-4,explicitly acknowledging Ryder's liability for employment-related claims—PROVIDER WILL COMPLY WITH ROCKWELL'S SUPPLIER CODE.[5]

These denials appear in:

---

[3] See Fed. R. Civ. P. 11(b)(3); see also *Navejar v. Iyiola*, No. 1:12-cv-01713-JMS-TAB, 2014 WL 5305995, at *2 (S.D. Ind. Oct. 16, 2014) (holding that Rule 11 imposes a duty of candor such that a party who files a pleading contradicting known facts is subject to sanctions).
[4] See *Citizens Gas & Coke Utility v. Am. Eng'g Testing, Inc.*, 210 F.R.D. 696, 701 (S.D. Ind. 2002) (holding that a contractual right to notice of claim imputes knowledge for purposes of liability and sanctions).
[5] *See Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 803–04 (7th Cir. 2008) (where a company's internal policies or contractual obligations conflict with its court statements, courts may consider contradiction as evidence of pretext or bad faith).

1. Rockwell's Answer (June 13, 2025)—(ECF NO. 48)
2. Opposition to Plaintiff's Motions for Judicial Notice (June 9, 2025)— (ECF NO. 38)
3. Defendants' Motion to Dismiss—(ECF NO. 47)

**C. Relief Requested**

Plaintiff respectfully asks this Court to impose any of the following:

1. An Order requiring Rockwell to amend or withdraw its false denials under Rule 11(c)(2);
2. Sanctions against Rockwell and/or counsel for intentional bad faith litigation associated with uncovering and proving these contradictions;
3. An Order striking the relevant portions of Rockwell's Answer and Motion to Dismiss as false and unsupported under Rule 11(b)(3);
4. Preservation of this record for future appellate review and possible referral for violation of ethical rules under Rule 83(b).

**III. CONCLUSION**

Defendant Rockwell has attempted to disclaim responsibility while contractually benefiting from indemnity, control provisions, and notice requirements that confirm its actual involvement. Its sworn denials are not only contradicted by contractual text and internal communications, but also by EEOC records and Plaintiff's formal submission to amend the charge to include Rockwell.[6]

The Court should not permit parties to evade accountability through contradiction and concealment. The truth-seeking function of the judiciary is compromised when such conduct is left unaddressed.

**Signature on next page**

---

[6] *See Gaskell v. Univ. of Kentucky*, 2010 WL 4867630, at *7 (E.D. Ky. Nov. 23, 2010) (courts have an obligation to address "obvious internal contradictions in a party's factual narrative"); *see also Dillon v. Miss. Military Dept.*, 23 F.4th 925, 930 (8th Cir. 2022) (contractual contradiction used to discredit sworn denial and establish employer knowledge).

Respectfully submitted,

Jesse Holloway
/s/ Jesse Holloway
11215 Willowmette Ln.
Indianapolis, IN 46235
Telephone: (765) 240-3118
ariesjackson702@icloud.com
PRO SE PLAINTIFF
Dated: June 22, 2025

# EXHIBIT - A

EXCERPTS FROM ROCKWELL'S AND RYDERS MSA

headquarters located at 11690 NW 105th Street, Miami, FL 33178 (hereinafter "**Provider**" or **"Ryder"**). Rockwell and Provider are each a "**Party**" and are collectively referred to herein as "**Parties**".

2.2 **Cooperation**. During the term of this Agreement Provider and Rockwell will work closely together in a spirit of trust and co-operation in order to create a mutually beneficial relationship. They will in good faith co- operate with each other and will take all reasonable action as is necessary for the efficient transmission of information and instructions and to enable each party to fulfil its obligations under this Agreement and to benefit from its terms. Both parties shall promptly inform each other of all changes in their respective businesses which may impact on the performance of this Agreement.

**14. Relationship Management.**

14.1 **Relationship Managers**. Each Party will appoint a suitably qualified and experienced person to act as its relationship manager ("**Relationship Manager**"). The Relationship Manager shall be responsible for monitoring the performance of the Services and shall be the primary contact with the other Party for purposes of overseeing this Agreement. The Relationship Managers as of the Commencement Date are set out in Schedule 10. Each Party shall notify the other Party promptly after having replaced the person acting as Relationship Manager. Notwithstanding anything to the contrary in this Section, Provider shall not appoint a Relationship Manager without obtaining Rockwell's approval of the appointment. Rockwell Automation can meet and interview Provider's candidate for the Relationship Manager position and to provide feedback to Provider prior to the candidate being appointed to the position.

14.2 **Collaboration Meetings**. The Relationship Managers shall meet and confer, not less than monthly to review the performance of the Services, obligations, and expectations arising under this Agreement; except that either party may request, and the other shall attend, a meeting more frequently at any time. At the meetings, the Relationship Managers shall review any or all of the following: (i) the cost savings and financial performance incurred or derived from Provider's operations hereunder; (ii) personnel levels; (iii) purchases or other acquisition of assets and/or other required expenditures; (iv) performance of the Services by Provider as measured against the KPIs; (v) non-conformance reports and the status of any actions implemented to cure service deficiencies; (vi) safety and distribution incident reports; (vii) any other matters related to performance of the Services and the Parties' obligations hereunder, including opportunities for improvements; and (viii) any disagreements or disputes arising under this Agreement.

8.2 Provider shall target a permanent employee to temporary employee ratio, related to the employees it uses for the Services, of at least 90:10 and include this metric in its reporting to Rockwell.

8.3 Provider shall maintain the following leadership structure. The roles in the black boxes in will not be eliminated or changed during the cost-plus period without Rockwell Automation's approval. Any necessary adjustments to roles would be made in collaboration with Rockwell Automation and be reflected in the fixed and variable rate structure.

23.4 Provider will comply with Rockwell's Supplier Code of Conduct, attached in Schedule 12.

**Schedule 13**

**Rockwell Automation Supplier Code of Conduct**

**ROCKWELL AUTOMATION SUPPLIER CODE OF CONDUCT**

- Rockwell Automation believes in: (i) conducting business with honesty and integrity and in accordance with all laws and regulations; (ii) worker safety; and, (iii) environmental and social responsibility. Therefore, all Rockwell Automation suppliers must abide by the standards set forth in this Supplier Code of Conduct.

  The Code is made up of the following five sections: Labor; Health and Safety; the Environment; Business Ethics; and, Management System.

**LABOR**

All suppliers must meet the following minimum recognized labor standards and uphold the human rights of workers, treating them with dignity and respect as understood by the international community. This applies to all workers including temporary, migrant, student, contract, and direct employees.

**9. Indemnification.**

9.1 Indemnification related to Provider's Performance. Except as otherwise specifically provided in this Agreement and subject to Section 9.3, Provider shall indemnify Rockwell and its managers, officers, directors, employees, and agents, and its and their heirs, successors, and permitted assigns against all costs, claims, expenses, damages, fines, proceedings, liabilities, expenses, and fees (including reasonable attorneys' fees) ("**Losses**") arising out of or in connection any action, suit, claim, investigation, or proceeding brought by a third-party ("**Third-Party Claim**") to the extent arising from the performance or non-performance of Provider's obligations under or pursuant to this Agreement.

9.2 Mutual Indemnity. Subject to Section 9.3, each party (the "**Indemnifying Party**") shall indemnify the other party and its managers, officers, directors, employees, and agents, and its and their heirs, successors, and permitted assigns (collectively the "**Indemnified Entities**") against all Losses arising out of or in connection with a Third-Party Claim arising from:

(a) death, personal injury or damage to property (excluding Products) resulting from any defect in any equipment owned, operated or maintained by the Indemnifying Party, its employees, subcontractors or agents.

(b) claims from the Indemnifying Party's employees, agents, subcontractors brought against the Indemnified Party for death, personal injury, or damage to tangible property to the extent such claims are caused by the Indemnifying Party's negligence, gross negligence recklessness or willful misconduct.

9.3 **Process**.

(a) To obtain indemnification under this Agreement, the entity seeking indemnification must promptly notify the indemnifying party of the relevant Third-Party Claim and deliver to the indemnifying party a copy of all legal pleadings concerning the Third-Party Claim. If an entity seeking indemnification fails to timely notify the indemnifying party of the Third-Party Claim, the indemnifying party will be relieved of its indemnification obligations concerning that Third-Party Claim to the extent that it was prejudiced by that failure and the indemnifying party will not be required to reimburse the indemnified entity for any expenses incurred during the period in which the indemnified entity failed to notify the indemnifying party of the Third-Party Claim.

(b) No compromise or settlement of a claim may be effected by the Indemnifying Party without the Indemnified Entity's consent if the compromise or



settlement imposes a penalty or limitation on the Indemnified Entity, admits the Indemnified Entity's fault, or does not fully release the Indemnified Entity from liability.

(c) Indemnifying Party's duty to indemnify Indemnified Entities will not apply to loss, damage, or delay to Products in connection with the Services and will be reduced to the extent Indemnified Party's own negligent or more culpable acts or omissions, breach of this Agreement, or violation of law caused the Losses.

(d) Gross negligence means tortious acts or omissions in excess of negligence and amounting to an intentional disregard of a substantial and known risk where such disregard constitutes a significant deviation from even minimal care. Willful misconduct means an intentional and wrongful act or an intentional and wrongful omission of a necessary act with the intent to inflict damage, loss, or injury. Examples of gross negligence and/or willful misconduct may include but are not limited to:

- **Programs that Enable Reporting of Concerns.** You must have a program that enables workers to report violations of the law or the policies set forth in this supplier code of conduct.

- **Non-Retaliation.** You must have and have communicated to workers a process for them to raise any concerns without fear of retaliation.

---

**MANAGEMENT SYSTEM**

You must adopt or establish a management system designed to ensure that you:

- Comply with applicable laws, regulations and customer requirements related to your operations and products.

- Conform to this supplier code of conduct.

- Identify and mitigate operational risks related to this supplier code of conduct.

- That all of the suppliers you use in connection with providing goods or services to Rockwell Automation also adhere to the standards set forth in this supplier code of conduct, including an audit process to verify such compliance.

23.9 **Entire Agreement**. This Agreement, including all appendices and schedules, contains the entire agreement between the parties with respect to its subject matter and supersedes all prior proposals, agreements, memoranda, or understandings between the Parties about the subject matter. To be effective, any amendment to this Agreement must be in writing and executed by both Parties.

23.10 **Severability**. If any provision of this Agreement should be held invalid under any existing or future law, the remainder of this Agreement will not be affected, and the Parties will try to change the invalid provision to make it valid.

**IN WITNESS** whereof the authorized representatives of the parties have duly signed this Agreement on the date first written above.

**Rockwell Automation, Inc.**

By: Blake Moret (Jan 6, 2023 19:48 CST)
Name: Blake Moret
Title: Chairman and CEO

06-Jan-2023

**Ryder Integrated Logistics, Inc.**

By: Matthew R. Ver Meer (Jan 6, 2023 18:14 CST)
Name: Matthew Ver Meer
Title: Vice President, Supply Chain Operations

06-Jan-2023

# EXHIBIT - B

CAUTION: The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Jesse Holloway
11215 Willowmet Ln
Indianapolis, IN 46235
Email: ariesjackson702@icloud.com
Phone: (317) 552-1163
October 12, 2024

VIA ELECTRONIC SUBMISSION

Pam Baker
Equal Employment Opportunity Commission (EEOC)

Dear Ms. Baker,

I am submitting this formal amendment to EEOC Charge No. EMrt24100936 to include Rockwell Automation, Inc. as a joint respondent. Additionally, I am providing new allegations to highlight further violations by Ryder Integrated Logistics, Inc., including wage manipulation, FMLA interference, discriminatory promotion denial, and retaliation, as well as violations of the Americans with Disabilities Act (ADA).

1. Rockwell Automation's Joint Liability

As a federal contractor governed by Executive Order 11246, Rockwell Automation is required to ensure compliance with labor laws and non-discriminatory practices through its suppliers. Despite multiple documented complaints submitted to Ryder and Rockwell's legal counsel, Lauren Orton, Rockwell failed to intervene, enabling Ryder to perpetuate unlawful practices. This lack of oversight establishes joint liability for the violations I experienced.

2. Violations of Ryder's Salary Policies and FMLA Interference

- Working Hours and Pay Policy (HR 02.02) Violation: Ryder guarantees salaried employees full pay for any week worked, yet during my FMLA leave, my wages were reduced, directly violating both company policy and FMLA regulations.
- Overtime Compensation Denial: On October 3rd and 4th, I worked overtime but was compensated only $270 for two days, while my colleagues received $540. I submitted a formal claim under Case HRC1628508, but the case was closed without resolution, evidencing bad faith in addressing my concerns.
- Retaliation for FMLA Use: The only difference between my situation and my peers was my use of intermittent FMLA leave, indicating retaliation. Ryder's Family and Medical Leave Policy (HR 03.29) guarantees that employees should not face wage penalties or retaliation for protected leave, yet these promises were disregarded.

Hello Jesse,

I just wanted to let you know that I received your Ombuds report about the situation at the Indiana distribution center and I'll jump right on it and start looking into it.

Also, I just wanted to note administratively, that it looks like 3 separate Ombuds reports were filed by you (one anonymously and two that were not) but all 3 appear to be identical. So, because that creates 3 separate cases in my system, I'll simply close two of them and continue administering just one.

Thanks,

Gary

**Gary Ballesteros**
Vice President, Law
Chief Compliance Officer & Ombuds
Rockwell Automation

1201 South 2nd Street
Milwaukee, WI 53204
Email: gwballesteros@ra.rockwell.com
Tel: +1 (414) 382-8480
Mobile: +1 (414) 333-8220

2024 WORLD'S MOST ETHICAL COMPANIES® ETHISPHERE™

**From:** ariesjackson702@icloud.com <ariesjackson702@icloud.com>
**Sent:** Friday, November 8, 2024 5:08 PM
**To:** Lauren Orton <lauren.orton@rockwellautomation.com>
**Subject:** EXTERNAL: Re: Good Faith

[Use caution with links & attachments]

I have a question,

**Would you be able to provide any insights into the reasons why I was given a final regarding my unprofessional conduct but voicing my concerns about inventory to the "customer"?**

<image005.jpg>

Sent from my iPhone

On Oct 8, 2024, at 12:20 PM, ariesjackson702@icloud.com wrote:

Sent from my iPhone

Begin forwarded message:

On Nov 13, 2024, at 12:54 PM, Lauren Orton <Lauren.Orton@rockwellautomation.com> wrote:

Hi, Jesse,
Thanks for your email. I am unable to provide any information on this as Rockwell Automation is not involved in Ryder's issuing of discipline to Ryder employees.

Thank you.

Best regards,

<image001.png>

**Lauren Orton**
Legal Counsel, Employment
1201 South Second Street
Milwaukee, WI 53204
USA
414-382-0054
lauren.orton@rockwellautomation.com

<image002.jpg>

**From:** ariesjackson702@icloud.com <ariesjackson702@icloud.com>
**Sent:** Wednesday, November 13, 2024 4:24 PM
**To:** Lauren Orton <Lauren.Orton@rockwellautomation.com>
**Subject:** Re: EXTERNAL: Re: Good Faith

Lauren,

I understand Rockwell may not directly oversee Ryder's internal disciplinary actions. However, I want to clarify some critical points regarding the expectations outlined in Rockwell's Supplier Code of Conduct and Executive Order 11246 compliance requirements for federal contractors.

Ryder as Rockwell's supplier is obligated to uphold Rockwell's standards, particularly regarding safe workplace practices, non-discrimination, and employee rights protections. I have documented concerns involving retaliation, unsafe working conditions, and breaches of workplace standards that directly contradict these requirements through means of an ethics report to Rockwell. Additionally, Ryder's blatant interference with my FMLA rights and discriminatory practices seem to undermine Rockwell's contractual obligations to ensure compliance with federal laws through its suppliers.

From: **Lauren Orton** Lauren.Orton@rockwellautomation.com
Subject: **RE: EXTERNAL: Re: Good Faith**
Date: **Nov 25, 2024 at 3:29:45 PM**
To: **ariesjackson702@icloud.com**

---

Jesse,
Rockwell flows federal contractor compliance requirements down to its subcontractors. Subcontractors are responsible for their own compliance with applicable requirements.

Rockwell is not involved in Ryder disciplinary decisions. However, we have followed up with Ryder and they indicated that there were legitimate business reasons for your final written warning. Ryder confirmed that the final written warning you sent to me was based on your comments during an interaction in the warehouse. You may follow up with Ryder directly if you have additional questions about the disciplinary action.

Best regards,

Rockwell Automation
expanding **human possibility**®

**Lauren Orton**
Legal Counsel, Employment
1201 South Second Street
Milwaukee, WI 53204
USA
414-382-0054
lauren.orton@rockwellautomation.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June, 2025, a true and correct copy of the above and foregoing was served via the Court's electronic filing system, and via electronic mail, on the following:

Jacob A. Freeland

R. Evan Jarrold,

Constangy, Brooks, Smith & Prophete, LLP

Email: jfreeland@constangy.com

Email: ejarrold@constangy.com

Counsel for Ryder Integrated Inc & Rockwell Automation Inc.,

Jesse Holloway

Pro Se Plaintiff

/s/ Jesse Holloway