UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JESSE HOLLOWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-00678-RLY-MG |
| | ) |
| RYDER INTEGRATED LOGISTICS, INC., | ) |
| ROCKWELL AUTOMATION, INC., | ) |
| | ) |
| Defendants. | ) |

### ORDER ON PLAINTIFF'S MOTION TO DISQUALIFY

Pending before the Court is Plaintiff's Motion to Disqualify Constangy, Brooks, Smith & Prophete ("Constangy Brooks") from representing Defendant Rockwell Automation, Inc. ("Rockwell") [Filing No. 45.] Plaintiff alleges there is a conflict of interest under ABA Model Rule 1.7, Indiana Rule of Professional Conduct 1.7(a), and governing case law. After taking the matter under advisement, the Court rules as follows.

### I.    BACKGROUND

Plaintiff contends that Constangy Brooks's representation of both Ryder Integrated Logistics and Rockwell Automation violates the professional rules of conduct. Plaintiff raises four arguments for disqualification: (1) Rockwell may serve as a witness against Ryder; (2) Constangy Brooks's dual representation creates a risk of cross-contamination and misuse of Plaintiff's confidential strategy; (3) Rockwell's defense strategy is inherently adverse to Ryder; and (4) Constangy Brooks is exploiting this conflict to the disadvantage of a pro se plaintiff. [Filing No. 45.]

In its response, Defendants argue Plaintiff lacks standing to disqualify Constangy Brooks, as he is not a current or former client of the firm. [Filing No. 58.] Defendants further point out

1

that Plaintiff "fails to consider that Rockwell may deny both the existence of unlawful employment practices by both Defendants as well as any significant awareness of Plaintiff or facts underlying his allegations." [Filing No. 58 at 4.] Even then, Defendants are clear that Ryder "does not seek to place liability on Rockwell as Plaintiff recommends." [Filing No. 58 at 4.]

In reply, Plaintiff states that he has standing because the alleged conflict implicates fairness and justice. Plaintiff points to Section 13.2 of the Master Services Agreement ("MSA") between Ryder and Rockwell. [Filing No. 62 at 2.] Plaintiff's Motion does not contain the language of the section he contends is in the agreement. [Filing No. 62 at 2.] According to Plaintiff's Motion, the section states: "If Rockwell notifies Provider that it is not satisfied with a Provider resource assigned to perform Services, Provider will take reasonable action to resolve Rockwell's concerns, short of removal. If the Parties mutually determine that it is necessary to replace a resource, Provider will replace them…" [Filing No. 62 at 2.] Plaintiff alleges that this statement proves Rockwell exercises control over Ryder employees, and that because of this Ryder's "only viable defense" is to argue Rockwell controlled their actions. [Filing No. 62 at 2.] Plaintiff reasons this language will pit Ryder and Rockwell against each other.

Plaintiff also points to Section 9.1 of the MSA, which states that Provider agrees to indemnify Rockwell and its affiliates for third-party claims and related losses stemming from Provider's performance or non-performance under the agreement. [Filing No. 62 at 2.] Plaintiff argues that this places the Defendants' interests against each other, because "every motion filed for Rockwell [by counsel] financially harms Ryder." [Filing No. 62 at 2.] Additionally, he argues this provision will create opposing arguments as to whether the claims arose from performance or non-performance. He further directs the Court to Section 9.3(b) of the MSA, which states that a settlement by the indemnifying party requires the indemnified entity's consent if it imposes

penalties, admits fault, or fails to fully release the indemnified entity from liability. [Filing No. 62 at 3.]

Last, Plaintiff highlights Section 9.3(a), which conditions indemnification on Ryder promptly notifying Rockwell of third-party claims. [Filing No. 62 at 3.] According to Plaintiff, Rockwell's denial of knowledge of Plaintiff's EEOC charge means counsel must either accuse Ryder of failing to notify or accuse Rockwell of lying. [Filing No. 62 at 3.] He argues that the fact both parties consented to dual representation does not matter when "judicial integrity is at risk." [Filing No. 62 at 4.] Plaintiff goes on pointing to a similar provision in the MSA to show that counsel will be required to argue one client's liability against the other.

## II. LEGAL STANDARD

Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722. Disqualification has "immediate, severe, and often irreparable. . . consequences," depriving a party of their "representation of choice" and disrupting litigation. *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (quoting *Freeman*, 689 F.2d at 719).

Federal courts generally recognize that standing to seek attorney disqualification is limited to current or former clients. Indiana Rule of Professional Conduct 1.7 governs representation of current clients. Rule 1.7 states that there is a concurrent conflict of interest when "the representation of one client will be directly adverse to another client" or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's

responsibilities to another client." IN ST RPC Rule 1.7(a). Additionally, the party moving to disqualify "bears the burden of proving that an actual conflict of interest in violation of Rule 1.7 exists, rather than merely a potential one." *Id.* at 890. Rule 1.7 is not meant to "serve as a weapon in the arsenal of a party opponent." *Mills v. Hausmann-McNally, S.C.*, 992 F. Supp. 2d 885, 891 (S.D. Ind. 2014). Therefore, an opposing party may seek disqualification when a conflict is "sufficiently grave to undermine the court's inherent interest in preserving the fair or efficient administration of justice." *Mills*, 992 F. Supp. 2d at 892 (quoting *Emmis Operating Co. v. CBS Radio, Inc.*, 480 F. Supp. 2d 1111, 1116 (S.D. Ind. 2007)). However, even if some legal conflict exists, it can be waivable; clients weigh the risks and benefits of representation, and courts are hesitant to second-guess their judgment. *See Closure Sys. Int'l Inc. v. Novembal USA Inc.*, 2020 WL 4726735 (S.D. Ind. May 13, 2020).

### III.  DISCUSSION

Plaintiff is neither a current nor former client of Constangy Brooks and therefore generally lacks standing to disqualify Defendants' counsel. However, even if Plaintiff did have standing to disqualify, he would have to demonstrate a conflict that is "sufficiently grave" as to undermine justice. Instead, Plaintiff has highlighted only potential conflicts, rather than actual conflicts. A party who argues only that it is possible for counsel to take opposing positions has not demonstrated that the fair and efficient administration of justice would be harmed. *Brannan v. Clinton Cnty. Bd. of Commissioners*, 2016 WL 6277664 (S.D. Ind. Oct. 27, 2016) (holding that movant failed to establish an actual conflict under Rule 1.7 and relied only on speculative, potential limitations to counsel's representation).

In this case, Plaintiff has not demonstrated that Rockwell and Ryder are presently advancing adverse legal positions or that their interests are materially limited. The Defendants

have not sought to shift liability onto one another, and both have consented to joint representation. Courts are hesitant to interfere with such consent, especially when the parties are sophisticated entities capable of evaluating risks. See *Closure Sys. Int'l Inc. v. Novembal USA Inc.*, 2020 WL 4726735 (S.D. Ind. May 13, 2020) (denying motion to disqualify where alleged conflict from concurrent representation was speculative, raised by a non-client, and where current clients consented to joint representation). The MSA provisions Plaintiff cites do not establish direct adversity. Those contractual indemnity terms govern Ryder's and Rockwell's financial relationship with each other, not their defenses to Plaintiff's claims, and both clients have knowingly consented to joint representation. Plaintiff's concerns reflect hypothetical divergences in strategy—not an actual, present-day conflict sufficient to override the presumption of ethical representation.

      Accordingly, Plaintiff's Motion to Disqualify Constangy Brooks from representing Rockwell Automation, Inc., [Filing No. 45], is **DENIED**.

Date: 9/4/2025

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

JESSE HOLLOWAY
11215 Willowmette Ln.
Indianapolis, IN 46235

All ECF-registered counsel of record via email