**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

FILED
05/01/2026
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

JESSE HOLLOWAY,
*Plaintiff,*

v.
Case No. 1:25-cv-00678-RLY-MG

RYDER INTEGRATED LOGISTICS, INC.,
and ROCKWELL AUTOMATION, INC.,
*Defendants.*

**PLAINTIFF'S REPLY IN SUPPORT OF COMBINED CROSS-MOTION**

**FOR RELIEF UNDER RULE 56(d) AND MOTION TO STRIKE DECLARATIONS OF TIM O'BRIEN AND STEPHEN TOMS**

**TABLE OF CONTENTS**

I. A NONMOVANT CANNOT BE COMPELLED TO CERTIFY FACTS WITHOUT EVIDENTIARY SUPPORT
II. RULE 56(d) IS THE REMEDY WHEN ESSENTIAL FACTS ARE UNAVAILABLE
III. THE CROSS-MOTION IS NOT UNTIMELY
IV. THE CROSS-MOTION ADDRESSES RYDER'S SOF IN THREE CATEGORIES
V. PLAINTIFF'S EXHIBITS ARE AUTHENTICATED
VI. THE MESAROS DECLARATION SHOULD BE DISREGARDED
VII. RYDER'S REPLY CONCEDES FACTS THAT CREATE JURY QUESTIONS
VIII. THE AFTER-ACQUIRED EVIDENCE DEFENSE FAILS ON RYDER'S OWN RECORD
IX. THE SNYDER CONTRADICTION REMAINS UNADDRESSED
X. THE DECLARATIONS REMAIN CONTRADICTED
XI. THE RECORD REQUIRES DENIAL OF SUMMARY JUDGMENT
CONCLUSION

**TABLE OF AUTHORITIES**

**CASES**

*Deere & Co. v. Ohio Gear, 462 F.3d 701 (7th Cir. 2006)*

*Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733 (7th Cir. 2013)
*Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049 (7th Cir. 2000)
*Mayle v. State of Illinois*, 956 F.3d 966 (7th Cir. 2020)
*McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995)
*Narducci v. Moore*, 572 F.3d 313 (7th Cir. 2009)
*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993)
*Robinson v. Waterman*, 1 F.4th 480 (7th Cir. 2021)
*Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712 (7th Cir. 2005)
*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)

**CASES CITED BY DEFENDANTS (DISTINGUISHED)**

*Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492 (7th Cir. 2006)
*Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001)
*Rosetto v. Pabst Brewing Co.*, 217 F.3d 539 (7th Cir. 2000)
*Specht v. Google Inc.*, 747 F.3d 929 (7th Cir. 2014)

**STATUTES AND RULES**

18 U.S.C. § 1623
28 U.S.C. § 1746
Fed. R. Civ. P. 11(b)(3), 37(c)(2), 56(c)(4), 56(d), 56(e)(1), 56(e)(3), 83(a)(1)
Fed. R. Evid. 801(d)(2), 901(b)(4)
S.D. Ind. L.R. 7-1, 56-1(b), 56-1(f)

Plaintiff Jesse Holloway submits this reply in support of his Combined Cross-Motion for Relief Under Rule 56(d) and Motion to Strike (ECF No. 173) and responds to arguments raised for the first time in Ryder's Reply (ECF No. 179), including untimeliness, authentication, and the claim that Plaintiff's failure to submit a formatted SOF response deems all facts admitted. Those arguments fail under controlling law. Also addressed is the Declaration of Amy Mesaros (ECF No. 181-1), filed for the first time in Rockwell's Reply. A Supplemental Declaration is filed herewith.

## I. A NONMOVANT CANNOT BE COMPELLED TO CERTIFY FACTS WITHOUT EVIDENTIARY SUPPORT

Ryder asks the Court to deem its entire Statement of Material Facts admitted solely because Plaintiff's Cross-Motion did not contain a paragraph-by-paragraph response. Reply at 2. That result would require Plaintiff to assert or dispute facts without evidentiary support—a result prohibited by three independent provisions of federal law.

First, Rule 11(b)(3) prohibits factual contentions that lack evidentiary support or a reasonable expectation of support after discovery. The Advisory Committee Notes are explicit: "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Compelling Plaintiff to file a Statement of Material Facts in Dispute when the evidence to support it has been withheld by the movant would require Plaintiff to certify factual positions without the evidentiary basis the rule demands.

Second, Rule 56(c)(4) requires that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." A party opposing summary judgment cannot manufacture personal knowledge about facts controlled by the movant.

Third, declarations are made under penalty of perjury, 28 U.S.C. § 1746. Under 18 U.S.C. § 1623, a knowingly false material declaration made under § 1746 is a federal offense. The statutory framework does not permit a nonmovant to sign a declaration asserting that facts are "disputed" when the evidence necessary to dispute them has been withheld by the movant. That is the intersection of Rule 11, Rule 56(c)(4), and the federal declaration statute—and all three point in the same direction: a party may not be compelled to make sworn factual assertions it lacks the evidence to support.

Local rules must be consistent with federal statutes and rules. Fed. R. Civ. P. 83(a)(1). Where a Federal Rule governs, it controls over a conflicting local practice. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). L.R. 56-1(f)'s deemed-admitted provision cannot be applied to override the federal prohibition on certifying facts without evidentiary support. This Court must read L.R. 56-1 in harmony with Rule 56(d), which provides the governing procedure for a nonmovant who lacks essential facts.

Even under L.R. 56-1(f), the consequence of deeming facts admitted is not automatic summary judgment. Rule 56(e)(3) provides that the Court "may grant summary judgment only if

the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." The Seventh Circuit confirmed this principle in *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021): even where a pro se plaintiff filed twenty days late and the district court deemed facts admitted, the movant "still had to show that summary judgment was proper given the undisputed facts." The court held that "a failure to file a timely response to such a motion is not a basis for automatically granting summary judgment as some kind of sanction." *Id.*

## II. RULE 56(d) IS THE REMEDY WHEN ESSENTIAL FACTS ARE UNAVAILABLE

Plaintiff's Cross-Motion invoked Rule 56(d). The Seventh Circuit grants such requests "as a matter of course when the party opposing summary judgment makes a good faith showing that it cannot yet effectively respond." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). Where the movant's own discovery conduct creates the evidentiary vacuum it seeks to exploit, summary judgment should not be granted. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000).

Plaintiff identified the specific categories of evidence withheld—comparator treatment, decision-maker knowledge of the EEOC charge, interview evaluation records, Toms-Rockwell communications, the FMLA-letter rescission decision, and privileged communications. He identified the discovery requests refused. He submitted a 30-page brief, a sworn declaration, and 347 pages of exhibits. He stated which facts he could dispute on personal knowledge, which he could not, and why. That is not a failure to respond. It is the showing Rule 56(d) contemplates.

The Advisory Committee Notes to Rule 56(e) confirm that summary judgment "cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements." When a party's response is incomplete, Rule 56(e)(1) permits the court to "give an opportunity to properly support or address the fact"—identified by the Notes as "the court's preferred first step."

Ryder's position, reduced to its essence, is: "We withheld the evidence. You cannot dispute the facts without the evidence. Therefore the facts are undisputed. Therefore we win." That is the strategy Rule 56(d) was designed to prevent.

## III. THE CROSS-MOTION IS NOT UNTIMELY

Plaintiff filed a combined Rule 56(d) cross-motion and motion to strike on March 30—three days after the March 27 deadline for a merits opposition. The filing is an affirmative motion under L.R. 7-1, not governed by the opposition deadline in ECF No. 163. A Rule 56(d) motion requests deferral. A motion to strike challenges admissibility of the movant's evidence. Neither is a merits opposition subject to the response deadline.

Ryder's authorities—*Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001), and *Rosetto v. Pabst Brewing Co.*, 217 F.3d 539 (7th Cir. 2000)—address discovery motions filed after the close of discovery, not Rule 56(d) motions filed in response to summary judgment. Rule 56(d) exists precisely for the situation where discovery has closed and the nonmovant cannot present essential facts.

Even if treated as a late opposition, *Robinson* held that late filing "is not a basis for automatically granting summary judgment as some kind of sanction." 1 F.4th at 483. In *Robinson*, the plaintiff filed twenty days late—not three. The *Pioneer* factors—prejudice, length of delay, reason, and good faith—all favor Plaintiff. 507 U.S. 380, 395 (1993). The delay was three days. Ryder filed its reply twenty-four days later, demonstrating no prejudice. The filing was a substantive 30-page brief with 347 pages of exhibits. "Deadlines are important, but if every missed deadline were fatal, federal courts would decide a lot fewer civil cases on their merits." *Mayle v. State of Illinois*, 956 F.3d 966, 972 (7th Cir. 2020).

## IV. THE CROSS-MOTION ADDRESSES RYDER'S SOF IN THREE CATEGORIES

L.R. 56-1(b) governs oppositions to summary judgment on the merits. Plaintiff's filing is a cross-motion for deferral under Rule 56(d); it is not an opposition. The entire premise of the Cross-Motion is that the record is incomplete because Ryder withheld discovery. Filing a formatted SOF

response would require Plaintiff to take definitive positions on facts he lacks the evidence to fully address—in a filing whose central argument is that the evidence has been withheld. To the extent the Court requires Plaintiff to address the SOF, Plaintiff identifies three categories:

**(1) Undisputed facts.** Basic employment dates, job title, reporting structure, and claims asserted are not contested.

**(2) Disputed as to characterization.** Ryder's characterizations of Plaintiff's conduct in SOF ¶¶ 22–29, 30–49, and 54 omit material context. Those disputes are developed in the Cross-Motion through the declaration contradictions (Sections III–VI, VIII–IX), the progressive-discipline evidence (Section VII.B), the termination-script analysis (Section I), the privilege-log timeline (Section II.E), and the five-stage evolution of Toms's interview description (Section VI.B). Each disputed characterization is tied to a Bates-stamped Ryder document. Ryder's reply argues the progressive discipline evidence does not demonstrate "a specific disciplinary policy" and cites its own written policy granting "sole and absolute discretion." Reply at 10. The written policy gave discretion. Ryder chose to exercise that discretion through progressive discipline in every other documented case at the same facility in 2024. The deviation from actual practice—not from the written policy—is the evidence of pretext. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 722 (7th Cir. 2005) (unlimited discretion is "precisely the environment where discriminatory application thrives"). Ryder's refusal to produce comparator discipline records—despite Plaintiff identifying three comparators by name—prevents Plaintiff from demonstrating how broadly the deviation was applied.

**(3) Not presently controvertible.** Comparator treatment, dissemination of the EEOC charge, Rockwell coordination, privileged communications, and interview-evaluation records cannot be controverted because Ryder withheld the necessary evidence. Plaintiff cannot swear to a factual position under Rule 11(b)(3) or § 1746 without that evidence. Deeming such facts admitted would reward the withholding. If the Court finds these responses insufficient, Plaintiff requests the

opportunity to supplement under Rule 56(e)(1), which the Advisory Committee Notes identify as "the court's preferred first step."

Plaintiff has disputed all facts within his personal knowledge and identified specific record contradictions in the Cross-Motion. Rule 56(d) applies only to facts that depend on evidence Ryder withheld.

**V. PLAINTIFF'S EXHIBITS ARE AUTHENTICATED**

Ryder devotes three pages to arguing that Plaintiff's declaration is a blanket statement insufficient to authenticate 347 pages. Reply at 2–3. This argument misrepresents the declaration Plaintiff filed.

Ryder quotes one sentence from paragraph 8: "I have personal knowledge of or sufficient foundation to authenticate each exhibit." Reply at 2. Ryder does not mention the eleven paragraphs that follow—paragraphs 9 through 17—in which Plaintiff identifies each category of exhibits by source, authentication basis, and evidentiary purpose: conferral correspondence authenticated as communications Plaintiff was party to (¶ 9); Ryder's own Bates-stamped productions authenticated as documents produced in litigation (¶ 10); Plaintiff's own emails authenticated on personal knowledge (¶ 11); the *Nouvertne* EEOC Position Statement authenticated by source with a specific limiting instruction (¶ 12); discovery responses, the termination script, and investigation documents identified by Bates number (¶¶ 13–15); EEOC Position Statements authenticated through the administrative process (¶¶ 16–17); and specific contradictions identified by Bates number with the declarant paragraph each contradicts (¶¶ 19–33).

Ryder's assertion that Plaintiff "does not and cannot identify what any of these records actually are" (Reply at 3) is contradicted by Plaintiff's Exhibit List, which identifies every exhibit by description, Bates range, and PDF page number. The Court need only compare the Exhibit List to Ryder's assertion.

On the law, a party's own discovery productions may be authenticated by the act of production. Fed. R. Evid. 901(b)(4) permits authentication by "appearance, contents, substance,

internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." When Ryder produced these documents with Bates stamps in response to discovery requests, the production itself constitutes authentication for use against Ryder.

Ryder's authorities do not support its position. *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006), addressed third-party documents for which the proponent lacked personal knowledge. *Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014), held documents were improperly authenticated because they were supported only by the plaintiff's declaration "rather than a declaration submitted by 'someone with personal knowledge.'" Here, the "someone with personal knowledge" is Ryder—the party that created the documents, maintained them in its systems, assigned Bates numbers, and produced them in discovery. Ryder is the authenticating witness. Its production is the authentication.

These documents are also admissible as statements of a party opponent under Fed. R. Evid. 801(d)(2). The HR investigation findings, the ER case notes, the termination script, Toms's interview statements, and Adams's interview statements are Ryder's business records, created by its employees, maintained in its systems. A party cannot produce documents in litigation and then argue they are inadmissible when offered against it.

**VI. THE MESAROS DECLARATION SHOULD BE DISREGARDED**

Rockwell submitted a declaration from Ryder employee Amy Mesaros for the first time in its reply brief (ECF No. 181-1). The declaration recharacterizes the phrase "Rockwell Operations" in Ryder's contemporaneous investigation report (Ryder/Holloway 000929) to mean "the Ryder operation at the Rockwell facility," not Rockwell employees. (Mesaros Decl. ¶ 6). Three aspects of this declaration warrant the Court's attention.

*First*, Mesaros is recharacterizing her own contemporaneous writing. Paragraph 5 acknowledges she is the author: "I wrote, 'Mr. O'Brien stated Rockwell Operations reported Mr. Holloway was out two days Intermittent FMLA.'" She now offers, twenty months later, a different meaning for the words she chose at the time. The contemporaneous record used the capitalized

term "Rockwell Operations." Patrick Strayer's email signature identifies him as "Distribution Center Operations Manager" for Rockwell Automation. (Exhibit Q, ECF No. 172-1). Defense counsel attempted the same recharacterization at Plaintiff's deposition: "Rockwell operations, that refers to Ryder management. Are you aware of that?" Plaintiff responded: "No." (ECF No. 172-1 at 130). The contemporaneous language, the job title, and the deposition exchange all point in one direction. The litigation declaration points in the other. That presents a genuine dispute of fact—not a matter for resolution by post-hoc declaration.

*Second*, Mesaros is not a neutral witness. She is one of the three individuals Ryder identified as involved in the FWW decision and "aware that Plaintiff had submitted internal complaints." (Ryder Third RFA No. 1 (Ex. FF)). She forwarded Plaintiff's complaint to Assistant General Counsel Bassford Wilson on October 16, 2024—three weeks before the FWW. (Ryder/Holloway 000244 (Ex. Y)). She directed that Abby Follis "stop communication with Mr. Holloway" on November 12, 2024. (Ryder/Holloway 000264 (Ex. AA)). A declaration from a decision-maker with a direct stake in the outcome, filed to reinterpret her own contemporaneous writing, follows the same pattern Plaintiff identified with O'Brien and Toms—characterizations that become progressively more favorable to the defense as litigation stakes increase.

*Third*, Rockwell claims it had no involvement in Plaintiff's employment. Yet a Ryder employee submitted a declaration on Rockwell's behalf to reinterpret Ryder's own records. That inconsistency itself supports Plaintiff's coordination theory. The declaration was filed for the first time in a reply brief, depriving Plaintiff of any opportunity to depose Mesaros or cross-examine her. New evidence submitted on reply deprives the opposing party of a fair opportunity to respond and is properly disregarded. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

## VII. RYDER'S REPLY CONCEDES FACTS THAT CREATE JURY QUESTIONS

Ryder's reply brief makes several factual concessions that independently create triable issues. Each concession, standing alone, precludes summary judgment.

**FMLA Letter.** Ryder acknowledges the letter was "premature." Reply at 9. Its own investigation found it issued "in error," ordered it removed from the personnel file, found Adams's misconduct "Substantiated," and directed future discipline be vetted through legal. (Ryder/Holloway 000929–930, 000265). The EEOC concluded the letter was "rescinded." (Ex. MM). Whether a letter that was premature, erroneous, placed in a personnel file, ordered removed, and rescinded by a federal agency constitutes adverse action is a question of fact for the jury.

**Interview Assessment.** Ryder's reply quotes its own EEOC Position Statement: Plaintiff "was stronger in his interview . . . but the managers were shocked by his lack of preparation, attitude, and arrogance." Reply at 5–6. Two observations. First, Ryder concedes in its own reply brief that Plaintiff was the stronger candidate. Second, the word "unprepared"—the characterization Toms's declaration introduces for the first time twenty months later—does not appear in the passage Ryder quotes. The contemporaneous ER assessment was "Interviewed OK." (Ryder/Holloway 000218 (Ex. W)). The progression from "OK" to "stronger" to deletion of the favorable term to "unprepared" reflects the type of evolving justification the Seventh Circuit has cautioned against. *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013).

**Spot Bonus Policy.** Ryder concedes: "every document he identifies . . . made clear there was no written policy." Reply at 12. The investigation recommended creating one. (Ryder/Holloway 000930 (Ex. P)). An unwritten, site-specific compensation practice with no objective criteria permits the discretionary application that can mask discrimination. Employers do not create written programs for practices that were functioning properly.

**Spot Bonus Payment.** Ryder confirms Plaintiff was "ultimately paid." Reply at 11. Its EEOC Position Statement said bonuses were paid "automatically" and Toms "approved all requests." (Ex. LL). Toms told ER he could not "recall anyone being denied in 7 months." (Ryder/Holloway 000220 (Ex. X)). His declaration claims "misses" with white CLMs. (Toms Decl. ¶ 17). If the system was "automatic" and Toms "approved all requests" and could not "recall anyone being denied," then the jury decides whether Plaintiff's delayed payment was consistent

with normal operations or consistent with the treatment of the Black employee on FMLA who had filed an EEOC charge.

**Progressive Discipline.** Ryder cites its own policy: "At the Company's sole and absolute discretion, immediate dismissal without prior written warning or oral warning may be warranted for any offense." Reply at 10. Unlimited discretion is "precisely the environment where discriminatory application thrives." *Rudin*, 420 F.3d at 722. The record shows that at the same facility, in the same year, progressive discipline was required for every other documented case—including a Final Written Warning that ER returned three weeks before Plaintiff's FWW because safety violations did not warrant skipping steps. (HOLLOWAY_000262 (Ex. Q)). Plaintiff's FWW was imposed without any prior discipline, any ER review, or any interview of the involved parties. (Ryder RFA 3, RFA 4 (Ex. FF)). The only variables that changed: Rockwell complained, and the facility had received Plaintiff's EEOC charge.

## VIII. THE AFTER-ACQUIRED EVIDENCE DEFENSE FAILS ON RYDER'S OWN RECORD

The after-acquired evidence defense fails because Ryder's background check relied on the employment *application*—not the resume. The application and the resume are separate documents containing separate information. The application was accurate. The background check verified the application and returned "Pass—Eligible."

Ryder's reply commits fully to this defense, stating: "Plaintiff modified the resume he submitted to Ryder to avoid identifying a former employer from which he was convicted of stealing $1 million in prescription drugs." Reply at 15. Ryder argues: "the mere fact a background check was conducted does not mean the admitted falsification was discovered." Reply at 16. Ryder is correct that a background check does not automatically discover every discrepancy. But Ryder's argument assumes the background check was working from the same information as the resume. It was not.

First Advantage processed the application through "US PKG 2 Crim and DT 4 panel Combined" (criminal screening and drug test) and "US PKG 3 Education and Employment" (employment verification). The result: "Pass — Eligible" and "BG:Pass_Eligible;DT:Negative." (Ryder/Holloway 000113 (Ex. HH)). The resume contained embellishments regarding tenure at a prior employer. The application did not. The background check verified the application—not the resume. The application is the document First Advantage processed, the document Rockwell's Warehousing Agreement contractually required Ryder to verify, and the document upon which Ryder's hiring clearance was based.

Under *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362–63 (1995), the defense requires the employer to prove it would not have hired or would have terminated the employee. Ryder's own contractually mandated screening system—running accurate application data—concluded Plaintiff was eligible for employment. O'Brien's post-hoc declaration, drafted for litigation, cannot override the contemporaneous determination of Ryder's own hiring system. Ryder identifies no policy authorizing termination for resume discrepancies. No such policy was produced in discovery, cited in any declaration, or referenced in any briefing. Whether the discrepancy would have altered the hiring decision is a question of fact.

**IX. THE SNYDER CONTRADICTION REMAINS UNADDRESSED**

Third RFA No. 5 asked whether Michael Snyder was disciplined due to employee complaints. Ryder denied it. (Ex. FF at 241). Ryder's own EEOC Position Statement in *Nouvertne v. Ryder*, filed by the same law firm, states Snyder "received a formal verbal counseling." (Ex. O at 100). Ryder's reply is silent on this point. Not one sentence in eighteen pages. The same counsel denied a fact under oath in this proceeding that it admitted to a federal agency in another. Plaintiff identified this contradiction in the Cross-Motion. (ECF No. 173 at 18). Ryder had twenty-four days to respond. It chose silence. Rule 37(c)(2) authorizes the Court to deem the matter established.

**X. THE DECLARATIONS REMAIN CONTRADICTED**

Ryder's reply reframes but does not resolve the declaration contradictions Plaintiff identified.

**O'Brien ¶ 5 (proxy).** Ryder does not deny the investigation found Adams was Isbell's proxy. It argues O'Brien "had no visibility." Reply at 9. But O'Brien did not declare he had no visibility. He declared flatly that "no proxy was designated." The investigation states one was designated: "Allen Adams was assigned as Melissa Isbell's proxy." (Ryder/Holloway 000929 (Ex. P)). These statements cannot both be true, presenting a genuine dispute of material fact.

**Toms ¶ 11 (interview).** Ryder argues "unprepared" is synonymous with "OK." Reply at 5–6. Those words are not synonymous. "OK" is a passing assessment. "Unprepared" is a failing one. The characterization evolved from "Interviewed OK" (September 2024 ER interview) to "stronger" (November 2024 EEOC Position Statement) to deletion of the favorable term (February 2025 Second Position Statement) to "unprepared" (February 2026 litigation declaration). That progression—documented across four independent sources, none of them Plaintiff's—is the evolving justification *Hitchcock* identifies as evidence of pretext. 718 F.3d at 738.

**Toms ¶ 6 (Khan requisition).** Toms told the ER investigator: "I gave the recruiter stipulations"; "6 people applied internally." (Ryder/Holloway 000212 (Ex. V)). His declaration states it was "not part of any requisition." Ryder does not address the prior statement. It challenges the document as "unauthenticated." The document is Ryder's own Bates-stamped production. See Section V, supra. The contradiction remains.

**Toms ¶ 17 (spot bonus misses).** Ryder argues "automatically" means "nothing more is required beyond working a pre-approved fifth or sixth day." Reply at 11–12. That definition reinforces Plaintiff's argument—if nothing more is required, there should be no "misses." Toms told ER he could not "recall anyone being denied." (Ryder/Holloway 000220 (Ex. X)). His declaration claims "misses" with white CLMs. Ryder's EEOC Position Statement said Toms "approved all requests." (Ex. LL). Three irreconcilable positions. Ryder's reply does not address the contradiction between the ER interview and the declaration.

**XI. THE RECORD REQUIRES DENIAL OF SUMMARY JUDGMENT**

The record contains direct, document-based contradictions that cannot be resolved on summary judgment:

The FMLA letter was premature, erroneous, and ordered removed. The declarant swears it was not disciplinary.

Adams was Isbell's proxy. The declarant swears no proxy was designated.

Ryder's counsel told the EEOC Plaintiff was "stronger" in his interview. The declarant now swears he was "unprepared."

Spot bonuses were paid "automatically" and Toms "approved all requests." The declarant now claims "misses."

Plaintiff gave specific bonus dates to the ER investigator. Ryder told the EEOC he had not submitted any information.

Snyder's discipline was admitted to the EEOC but denied under oath in this case.

The background check—running accurate application data—returned "Pass-Eligible." The declarant swears Plaintiff would not have been hired.

Progressive discipline was enforced for others at the same facility in the same year but bypassed for the Black employee on FMLA who had filed an EEOC charge.

The termination script instructs: "make no reference to the complaints he's made internally or to the customer."

A Ryder decision-maker now files a declaration for Rockwell—the company claiming no involvement—reinterpreting her own contemporaneous words.

These are Ryder's own documents, bearing Ryder's Bates stamps, created by Ryder's employees, maintained in Ryder's systems. These contradictions are direct and material. Every contradicting document was in counsel's possession before the contradictory declaration was

signed. Whether the declarations or the documents are true is a credibility determination for a jury, not a matter for summary judgment.

**CONCLUSION**

For the reasons above, and because the record presents multiple credibility determinations reserved for a jury, Plaintiff respectfully requests that the Court:

(1) Deny Ryder's Motion for Summary Judgment, or defer ruling under Rule 56(d) pending completion of discovery;

(2) Strike the Declarations of O'Brien and Toms to the extent identified in Plaintiff's Cross-Motion;

(3) Deem Third RFA No. 5 (Snyder discipline) established under Rule 37(c)(2);

(4) Reject the after-acquired evidence defense as presenting factual disputes that preclude resolution at summary judgment;

(5) Disregard the Mesaros Declaration (ECF No. 181-1) as new evidence improperly submitted for the first time in a reply brief;

(6) To the extent the Court finds Plaintiff's SOF responses insufficient, afford Plaintiff the opportunity to supplement under Rule 56(e)(1);

(7) Plaintiff does not address Ryder's Social Security argument because it pertains to damages calculation, not liability, and is premature at the summary judgment stage; and

(8) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jesse Holloway
Jesse Holloway, Pro Se Plaintiff
915 Cordoba Court
University Park, IL 60484
(708) 855-3832
ariesjackson702@icloud.com

Dated: May 1, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of May, 2026, a true and correct copy of the foregoing was served via the Court's electronic filing system on all counsel of record:

R. Evan Jarrold

Rayner Mangum

Jacob A. Freeland

Constangy, Brooks, Smith & Prophete, LLP

Email: ejarrold@constangy.com

Email: rmangum@constangy.com

Email: jfreeland@constangy.com

*Counsel for Ryder Integrated Logistics, Inc. & Rockwell Automation, Inc.*

/s/ Jesse Holloway
Jesse Holloway, Pro Se Plaintiff